IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:25-CR-9-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| LORENIZO RESHAUD SIMMONS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter came before the court for sentencing this date, with prior hearings in the case on sentencing occurring October 9, 2025, and December 8, 2025. Defendant appeared through counsel Lauren H. Brennan, and the government appeared through counsel Kimberly Dixon and Ashley Foxx. The court memorializes herein reasons for overruling in part and sustaining in part objections raised by defendant to the Presentence Investigation Report ("PSR").

## BACKGROUND

With a written plea agreement, defendant pleaded guilty to distribution of 40 grams or more of a mixture and substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) (count three). As pertinent to the analysis herein, the parties stipulated in the plea agreement that "[t]he relevant and readily provable quantity of controlled substances to be used in the base offense level pursuant to USSG §2Dl.1 is at least 280 G but less than 12 KG of fentanyl, which corresponds to a base offense level of at least 28 but no more than 34." (Plea Agr. (DE 35) at 7).

The probation office calculated base offense level 32, a two-level enhancement for maintaining a premises, and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 31. Coupled with criminal history category I, this resulted in a guidelines

range of 108-135 months. In addendum to the PSR, the probation office summarized and addressed three objections raised by defendant as follows:

1. Paragraphs 9, 10, and 51: The defendant objects to the use of the 'fentanyl analogue' conversion value and asserts that 'fentanyl' conversion should be applied. Additionally, the defendant objects to the quantity of controlled substances he is held accounted for. . . .

2. Paragraphs 10 and 52: The defendant objects to the 2-level increase for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. . . .

3. Paragraph 14: The defendant objects to the inclusion of this paragraph. . . .

(PSR Addendum (DE 40) at 16-18).

A.      Intrusion of Artificial Intelligence ("AI") Issues at October 9, 2025, Sentencing Hearing

On October 3, 2025, six days in advance of original sentencing scheduled for October 9, 2025, defendant filed sentencing memorandum, through counsel, which contained a number of errors in its citations, quotations, and case references. (DE 43) (hereinafter, "defendant's original sentencing memorandum" in text, or "Def's Mem.," in citations). Eleven such examples follow:

- Defendant cites "United States v. Hazel, 696 F.3d 473, 478 (4th Cir. 2012)," for the proposition that the "government bears the burden of establishing the facts necessary to support the applicable guideline range." (Def's Mem. (DE 43) at 4-5). There is no such case. There is a case named United States v. Hazel, 696 F.2d 473 (6th Cir. 1983), but this is a Sixth Circuit case from a different year, which does not address sentencing.

- Defendant cites "United States v. Angel, 102 F.3d 1066 (4th Cir. 1996)," as containing the quoted language "drug quantity finding must be supported by reliable and specific evidence in the record." (Def's Mem. (DE 43) at 7). There is no such case, nor any case from the United States Court of Appeals for the Fourth Circuit using that quoted language.

- Defendant cites "United States v. Brehm, 442 F.3d 1291, 1293 (4th Cir. 2006)," as containing the quoted language "any uncertainty should be resolved in the defendant's favor." (Def's Mem. (DE 43) at 7). This is an Eleventh Circuit case, and it does not contain the quoted language.

- Defendant cites "United States v. Nealy, 232 F.3d 825, 829 (4th Cir. 2000)," for the proposition that the "government cannot meet its burden through, speculation,

2

estimation, or reliance on unreliable measurement methods." (Def's Mem. (DE 43) at 7). This is an Eleventh Circuit case, and it does not mention speculation, estimation, or measurement.

- Defendant cites "United States v. Edwards, 188 F.3d 230, 232 (4th Cir. 1999)," as containing the quoted language "the weight of materials that are not controlled substances, such as the packaging, should not be included in determining the quantity of drugs for sentencing purposes." (Def's Mem. (DE 43) at 8). Edwards does not contain the quoted language. Indeed, it does not even address a drug offense.

- Defendant cites "United States v. Harrision [sic], 918 F.2d 469, 473 (4th Cir. 1990)" as containing the quoted text that laboratory testing provides "more precise and reliable evidence" than field measurements. (Def's Mem. (DE 43) at 9). This is a Fifth Circuit case (with the defendant's name "Harrison"), not a case from the Fourth Circuit, and it does not contain the quoted text.

In sum, nearly all cases citations in defendant's original sentencing memorandum were to cases that did not exist, were decided by a different court than specified, or addressed topics or contained quoted texts different from those specified. Upon review in preparation for October 9, 2025, sentencing hearing, the court determined that defendant's memorandum bore the hallmarks of generation, at least in some parts, by Artificial Intelligence ("AI").[1]

At hearing October 9, 2025, of her own initiative, defense counsel noted errors in defendant's original sentencing memorandum. With respect to counsel's AI usage, she explained:

> Your Honor, I went online and was just trying to frame out my argument, typed some things in on A.I., spit it out, then I went in and started plugging things in. And obviously you have to go in; it's not going to give you correct case citations. So I framed my argument out, and then saved my draft, went back and worked on it later. And when I PDF'd the version, I PDF'd my first draft version as opposed to my final version which has the actual case citations in the Fourth Circuit that are correct. It cites to cases like Gilliam and Stewart and cases that are actually Fourth Circuit cases, not imaginary cases.

In reflection, defendant's original sentencing memorandum was filed in contravention of the Local Criminal Rules because it contained at least 11 statements of law which were "false statement[s] of . . . law," made without recognition of "the existence of pertinent legal authorities"

---

[1] Additionally, the defendant's memorandum included repetitive argument sections, with issues about drug quantity.

and "legal premises properly applicable to the case." (Rules of Professional Conduct, Rule 3.3(a), comments 1, 2, 4). In addition, defendant's original sentencing memorandum did not include argument "with appropriate citations." Local Criminal Rule 47.2.

Grave consequences that can result from using AI as a tool for drafting memoranda and other legal documents. As counsel readily acknowledged at the first sentencing hearing, it is "really scary" what AI can do as a legal drafting tool. (Tr. (DE 58) at 5). As the instant case demonstrates, AI will insert case names and citations for cases that do not exist, or with a wrong court designation, or most critically, AI will invent or fabricate language as quoted content that is not present in the cited case or that has nothing to do with the subject matter of it. See Jones v. Kankakee Cnty. Sheriff's Dep't, 164 F.4th 967, 969 (7th Cir. 2026) (noting these are "the hallmarks of a so-called AI 'hallucination,' a circumstance where an AI large language model generates an output that is fictional, inaccurate, or nonsensical").

Such errors in briefing are particularly burdensome regarding time and effort of the court and the party on the other side, where the fact of filing by an attorney casts the appearance of accurate, pertinent authorities. Their falsity only can be revealed by careful scrutiny. As observed here, such errors "really [take] away from [the court's] obvious understanding of what [counsel is] trying to say in [the court's] review of [defendant's] case." (Tr. (DE 58) at 6). The court allowed counsel to file a corrected brief, noting "there are lessons to be learned." (Id. at 6). Hearing was continued.

B.      December 8, 2025, Sentencing Hearing

In advance of this hearing defendant filed amended sentencing memorandum. (DE 45) (hereinafter, "defendant's amended sentencing memorandum" in text, or "Def's Am. Mem.," in citations). Supplement followed including the curriculum vitae of an expert, Edward Brown

4

("Brown"), proffered by defendant. (DE 52). The probation office filed the operative revised PSR October 30, 2025, to account for amendments to the guidelines. (DE 47).

December 8, 2025, the court heard argument on defendant's objection relating to whether the drugs at issue "should be called a fentanyl analog or something different." (Tr. (DE 55) at 3). The court "overrul[ed]" the objection in this part. (Id. at 12). Defendant thereafter presented his "expert . . . to explain why fluorofentanyl is not even confirmed as being present" in this case. (Id. at 12-13). The government presented testimony of Patti Carroll, forensic scientist with the North Carolina State Crime Laboratory regarding the same issues, (Id. at 45-79), followed by testimony of Brian Murphy, agent with Halifax County Sheriff's Office, regarding chain of custody. (Id. at 82-98).

Upon conclusion, the court directed the government to file a sentencing memorandum with supplemental photograph exhibits as forecasted by it, followed by a response by defendant. The court stated it would reconvene the sentencing, without having "to have the witnesses back," March 10, 2026. (Tr. 104, 107). The government's sentencing memorandum followed on the record February 1, 2026, with reliance upon an index of items seized from defendant, as well as forecasted color photographs. The government argues that the court should adopt base offense level 32, consistent with the PSR.

In his response filed February 17, 2026, defendant maintains that part of his objection based on argument that analysis by the North Carolina State Crime Laboratory was not "sufficiently reliable to determine whether the substance identified was in fact" fluorofentanyl,[2] and the

---

[2]     In his response memorandum, defendant uses the spelling "Flourofentanyl" (capitalized, and with an "ou"). (E.g., Def's Resp. (DE 59) at 1-2). In the instant memorandum opinion, the court uses the spelling "fluorofentanyl," (not capitalized and with a "uo"), as that is the spelling used in the official transcript, the PSR, the government's brief, reported circuit court opinions that have reference the substance, and scientific sources. See United States v. Dorelus, 154 F.4th 1349, 1351 (11th Cir. 2025); United States v. Jordan, 100 F.4th 714, 717 (6th Cir. 2024); United States v. Payne, 99 F.4th 495, 499 (9th Cir. 2024); see also, e.g., United States Centers for Disease Control, Morbidity and Mortality Weekly Report (MMWR), "Notes from the Field: Overdose Deaths Involving Para-fluorofentanyl — United

5

remaining part of his objection "that he is responsible for no more than the amount of controlled substance equivalent to a base offense level 28." (Def's Resp. (DE 59) at 1, 8). Defendant notes that although he calculates a drug weight at no more than 673.25 kilograms of converted drug weight, "which equates to a base offense level of 26," where "defendant stipulated in the plea agreement that the base offense level was between a 28 and 34," he "will not argue for the court to assign a base offense level below a 28." (Id. at 8, n. 9).

C.      March 10, 2026, Sentencing Hearing

At third sentencing hearing, the court noted it had overruled that part of defendant's objection related to fentanyl analog, and defendant's objection to the two-level increase for maintaining a premises, as well as defendant's objection to paragraph 14 of the PSR. As such, focus this date narrowed on remaining part of defendant's objection related to base offense level, discussed below.

**COURT'S DISCUSSION**

As pertinent to the portion of defendant's objection remaining for decision at March 10, 2026, sentencing hearing, the government must prove the drug weight attributable to the defendant by a preponderance of the evidence. United States v. McGee, 736 F.3d 263, 271 (4th Cir. 2013). It "may meet its burden by presenting evidence that the court deems sufficient to establish the quantity of drugs attributable to a defendant." United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). "'[T]he district court's calculation of the quantity of drugs attributable to a defendant for sentencing purposes' is a classic factual determination." United States v. Jones, 767 F. App'x 567, 568 (4th Cir. 2019) (quoting United States v. Crawford, 734 F.3d 339, 342 (4th Cir. 2013)).

---

States, July 2020–June 2021," https://www.cdc.gov/mmwr/volumes/71/wr/mm7139a3.htm [https://perma.cc/26FZ-CY6Z]. For ease of reference, in the citation in the text above, the court does not quote the spelling used by defendant.

6

"[T]he court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy," U.S.S.G. § 6A1.3(a), including "information concerning uncharged criminal conduct" or "conduct [that] did not result in a conviction." Id. comment. In particular, "[d]irect or hearsay testimony of lay witnesses as to the amounts attributable to the defendant can provide sufficiently reliable evidence of [drug] quantity," for purposes of sentencing. United States v. Sampson, 140 F.3d 585, 592 (4th Cir. 1998).

"[W]here courts have evidence of a number of transactions, they [are] permitted to multiply that number by an average weight-per-transaction to reach an estimate." United States v. Hickman, 626 F.3d 756, 769 (4th Cir. 2010). However, courts must "make conservative approximations," so that "when choosing between a number of plausible estimates of drug quantity a court must err on the side of caution." Id. "[A] court cannot uphold a drug quantity calculation on the basis of hunch or intuition." Id. at 770.

Here, there are considerable defects and issues with the government's evidence that preclude a determination by the court of a drug quantity exceeding that needed to establish base offense level 28. The government in its brief implicitly recognizes that only amounts attributed to drugs found in the "Waner Bridge Road residence," as opposed to the vehicles at that location, reliably may be traced to defendant. (Gov's Mem. (DE 57) at 3-5). The government invites the court to work backwards, by process of elimination, from the total amount of drugs seized May 4, 2023, and to subtract probable amounts that would have needed to be seized from the vehicles, to

7

reach a drug weight equivalent to base offense level 28 (fentanyl analog between 70 grams and 100 grams[3]). (Id. at 4-5).

A useful guide in determining the significance of the items of evidence as it bears upon base offense level is the drug quantity table at U.S.S.G. § 2D1.1, which reveals the key weight thresholds, as follows:

> **Level 32** - <u>At least 300 G</u> but less than 1 KG of a Fentanyl Analogue [Government's position]
> **Level 30** - At least 100 G but less than 300 G of a Fentanyl Analogue
> **Level 28** - At least 70 G but <u>less than 100 G</u> of a Fentanyl Analogue [Defendant's position per plea agreement].

<u>See</u> U.S.S.G. § 2D1.1(c)(4-6) (emphasis added).

Here, the government has not articulated sufficiently in its brief or argument the actual evidence that proves that defendant should be held accountable for more than 100 grams of a Fentanyl Analogue, as would be required for a base offense level greater than level 28. The government concedes the "property sheet" attached as an exhibit to its memorandum, "is lacking details that would have been helpful for the Court and the parties to more easily determine the defendant[']s [base offense level]." (Gov's Mem. (DE 57) at 5). Indeed that property sheet references a series of articles seized, comprising in each instance an "envelope" containing fentanyl or suspected fentanyl, but with no further location indicators other than the address of the property. (DE 57-1).

The government cites to testimony by Murphy that only "one white baggie" was found in the vehicles and that "all of the other controlled substances" were found in the "locked bedroom." (Tr. (DE 55) at 85). But, the government acknowledges that upon cross-examination, "Murphy

---

[3] There is a typographical error in the government's memorandum where it states this range as "at least 70G but less than 100 <u>KG</u>" of fentanyl analog. (Gov. Mem. (DE 57) at 5) (emphasis added). The court interprets this range instead to be correctly noted as "at least 70G but less than 100 <u>G</u>" of fentanyl analog. <u>See</u> U.S.S.G. § 2D1.2

8

agreed with defense counsel that there was more than a single bag with powdered substances in them found in the vehicles, which is accurate." (Gov. Mem. (DE 57) at 4 (citing Tr. (DE 55) at 90-91)). The government also notes its photographs show "numerous baggies located in the vehicles." (Id.). While it contends "most of them are empty," the photographs are not so clear as the government suggests. (Id.; see DE 57-2). Further, although the government in its argument urged the court to rely upon the photographs, the court finds the photographs too unclear in context and form to provide a basis for attributing or not attributing drug quantities to defendant.

In sum, the government leaves to the court to piece together too much from the evidence and the testimony. Where the government bears the burden of proving drug quantity by a preponderance of the evidence, and where the government's evidence is infected by a lack of precision and detail that would allow a reliable estimate in excess of 100 grams of fentanyl analog attributed directly to defendant, the court sustained defendant's objection to drug quantity in excess of that needed to establish base offense level 28.

## CONCLUSION

For the foregoing reasons, and as discussed on the record, the court OVERRULED in part and SUSTAINED in part defendant's objections.

DATED, this the 10th day of March, 2026.

_____
LOUISE W. FLANAGAN
United States District Judge

9